(C. D. 1463)

AMERIS TRADING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 11, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* and *Donald W. Paley* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, special attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges; Rao, J., dissenting

Lawrence, Judge: Certain imported devices described on the consular invoice as "Hosiery mending machines for stockings" were classified by the collector of customs as knitting machines and duty was assessed thereon at the rate of 27½ per centum ad valorem as provided in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the trade agreement between the United States and Switzerland, 69 Treas. Dec. 74, T. D. 48093.

Plaintiff relies upon the claims that the devices are not knitting machines and, therefore, should be classified as machines, not specially provided for, and dutiable at 15 per centum ad valorem pursuant to said paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, or, in the alternative, as articles having as an essential feature an electrical element or device and dutiable at 15 per centum ad valorem pursuant to the provision in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by said general agreement. The further claim for classification as sewing machines in said paragraph 372, as modified, *supra*, was abandoned.

### THE STATUTES

The statutory provisions above referred to, so far as applicable here, read:

Paragraph 372, Tariff Act of 1930, as modified by the Swiss Trade Agreement, *supra*—

Knitting machines * * * finished or unfinished, and not specially provided for_____27½% ad val.

Paragraph 372 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*—

Machines, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other   \*   \*   \*_____15% ad val.

Paragraph 353 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*—

Articles   \*   \*   \*   having as an essential feature an electrical element or device   \*   \*   \*

\*      \*      \*      \*      \*      \*      \*

Other articles   \*   \*   \*_____15% ad val.

Our first inquiry will be directed to the question whether the devices are, in fact, knitting machines, as classified by the collector and, secondly, if not knitting machines, whether they are specifically enumerated in paragraph 353, as modified, *supra*, as articles "having as an essential feature an electrical element or device."

Two witnesses testified for the plaintiff and one for the defendant. Samuel Fadem, plaintiff's first witness, testified that he was the owner of plaintiff company. He produced a sample of the imported machines which was received in evidence as exhibit 1. Since it was a demonstrator's model, it was withdrawn at the conclusion of the hearing, and a picture of the machine was received in evidence as illustrative exhibit 2.

Fadem testified that he had been familiar with the machines for about 2 or 3 years and had seen them used solely for mending or repairing women's nylon hose. He stated that the machines operate by electric power. A needle from which the hook on one end had been broken off, and which is used on the machines, was received in evidence as exhibit 3. Due to the fact that this witness apparently had but little knowledge of the detailed structure and operation of the machines, he was unable to give a clear demonstration of their utility.

Plaintiff's second witness, Alexander Moskowitz, testified that he was vice president of the Milton Hosiery Mills, Inc., and of the American Stella Machine Co., Inc.; that the Milton concern, with which he had been connected for 16 years, was engaged in manufacturing ladies' nylon hosiery; that the Stella company was engaged in distributing the American Stella Latch Machine; that he had been familiar with the operation of machines like exhibit 1 for about 15 years which, he stated, are used only for repairing hosiery. He described their operation as follows:

Well, first thing, an operator keeps her foot on the pedal, and takes a stocking that has a run in it and she inserts this needle to the beginning of the run and she presses her foot on the pedal which causes the needle to go up and down, which

latches the open run and closes it by keeping the foot on the pressure and it keeps going up and down until it has been repaired.

Q. Where has she held the stocking while she has made the repair?—A. Over this tubular object.

Q. Is that the device which is marked "X" in Plaintiff's Exhibit 2?—A. Yes, it is.

Further, the witness testified—

* * * although this machine is used in cleaning shops for repairing stockings, the primary use of this machine is in hosiery mills for repairing our own stockings because in the process of manufacture, we make a certain percentage and you repair them in your own mill in order to have salable merchandise, but they do charge, I think 25¢ to repair in the stores.

It was also testified that an electric motor operates a pump which forces air through a tube into the needle head and causes the needle "to go up and down while repairing the stocking." When asked if the needle was pointed, the witness replied: "This is not a sewing needle; this is called a latching needle * * * [which has] a little hook at the end."

The witness stated that "This machine and any similar machines can do nothing but repair runs in hosiery * * * rayon, silk, cotton," and that new thread is not used in that operation. Moskowitz produced a so-called latching needle (exhibit 3) which is used in the mending operation above described. He also produced a needle of the type used in knitting machines for the production of hosiery, which was received in evidence as exhibit 4.

In explaining the difference between exhibits 3 and 4, the witness stated:

The needle in Exhibit 4 is a needle to make it; Exhibit 3 is a latch needle only to repair a stocking.

He stated further that exhibit 3 has a latch and that exhibit 4, the knitting needle, does not have a latch. It is clear from the testimony of this witness that the imported machines could not operate with a needle like exhibit 4 and, furthermore, that within his experience it would not be possible to repair hosiery on a hosiery-knitting machine. It also appears that an electric motor is essential to the operation of the machines under consideration. As stated by the witness:

* * * you have to have the motor to power the machine and to regulate the pressure that you are going to use on your needle. * * * *The motor is built in the machine.* [Italics supplied.]

Although the witness testified at great length to the operation of the machines in repairing hosiery, it is nevertheless difficult to visualize the exact method by which runs in hosiery are repaired. It is obvious from Moskowitz's testimony that whereas a knitting machine fabricates hosiery from yarn or thread, the machines of the type under

consideration which do not employ thread or yarn in their operation merely repair completed hosiery in which runs have appeared.

The testimony of Moskowitz also discloses that machines such as exhibit 1 are mostly used in factories and to some extent in dye houses and in dry-cleaning establishments.

Defendant's witness, Arthur de St. Maurice, testified in substance that he was engaged as a manufacturer and distributor of hosiery-mending machines, having been in that business since 1932 both in this country and in France; that he has seen hundreds of them in operation in this country mostly in hosiery mills; and that his machines operate on the same principle as exhibit 1, the imported machine.

In describing the method of operation of his machine, the following testimony was given by St. Maurice:

Q. Is that a knitting operation?—A. I don't know.

Q. Do you call it a knitting operation?—A. Yes, we do.

Q. How long have you been calling it a knitting operation?—A. Ever since the machine, since 1932.

Q. Do you so describe it in your literature?—A. I really don't know.

St. Maurice also testified that a knitting machine—

\* \* \* is one that uses a thread in order to make some kind of a product.

\* \* \* \* \* \* \*

\* \* \* The thread is supplied from outside of the machine and fed to the machine.

The witness admitted that exhibit 1 does not create anything, but is "used after the stocking itself has been completely knitted," and is used in a different section of the factory from that where the knitting machines are located.

The testimony of this witness does not contradict in any material degree that introduced by plaintiff, but in many respects tends to substantiate it.

It is the contention of plaintiff, based upon the record evidence, that the machines in controversy are readily distinguishable from knitting machines, it being pointed out that they do not create an article from yarn or thread and, therefore, have none of the characteristics of a knitting machine as known in the industry—their sole purpose being to mend or repair breaks or runs in stockings. No attempt has been made in this case to establish a restricted commercial meaning of the terms "knit" and "knitting" different from their common meaning. Consequently, the commercial and common meanings are presumptively the same. *Swan* v. *Arthur*, 103 U. S. 597.

Our attention has been invited to the definition of the word "knit" appearing in Webster's New International Dictionary, Second Edition, Unabridged, at page 1370:

**knit,** v.; *Transitive*: \* \* \* **2.** To form, as a textile fabric, by the interlacing of a single yarn or thread in a series of connected loops, by means of needles, either by hand or by machinery; as, to *knit* stockings.

The following definitions are taken from Funk & Wagnalls New Standard Dictionary of the English Language, edition 1941:

**knit,** v. **I.**$t$.**1.** To form, as a fabric or garment, by a series of interlocked loops of a continuous yarn or thread, with straight needles worked by the hand or by machinery; as, to *knit* a stocking.

\*       \*       \*       \*       \*       \*       \*

**II.**$i$.**1.** To make a fabric by interweaving yarn or thread by means of straight needles.

The same authority defines the word "knitting" as:

The act of forming a knit fabric, or of uniting or drawing together.

Under the same heading, a knitting machine is defined as—

A machine for knitting, employing a series of hooked needles.

An illustration of a knitting machine is also shown, and its operation described as follows:

The hand-crank (c) drives the needle-guiding cylinder (n) by means of the bevel-wheel (w), causing the yarn-carrier (y) to revolve and pass the yarn from the bobbin (b) to the circular row of hooked needles (h). An internal cam mechanism gives an up-and-down motion to the needles, which draw the yarn into loops. When a ring of loops is formed it is held in place while another row is looped thereto, and so on until the stocking (s) is formed. To narrow the circle, or form the heel, various needles are thrown out of use.

These definitions coincide in substance with the views expressed by the witnesses, and are likewise in harmony with our knowledge of the common meaning attributable to the words "knit" and "knitting."

Aided by the foregoing definitions, the testimonial record, and by our own understanding of those terms, we are satisfied that the imported machines now before us are not knitting machines, as contemplated by paragraph 372, as modified, *supra*.

Since it appears from the record that the machines have as an integral part a built-in motor, necessary to operate the compressed-air pump which motivates the latch needle used in repairing hosiery, we are of the opinion that the machines are articles "having as an essential feature an electrical element or device," as provided in paragraph 353, as modified, *supra*, dutiable at 15 per centum ad valorem, as claimed by plaintiff. This provision is, of course, more specific than the one for "machines, finished or unfinished, not specially provided for" in paragraph 372, as modified, *supra*, also providing for duty at 15 per centum ad valorem, as alternatively claimed by plaintiff. *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, and *Coxhead Corp.* v. *United States*, id. 96, T. D. 47080.

In accordance with the views above expressed, we find and hold that the machines here under consideration should properly be clas-

sified as articles having as an essential feature an electrical element or device and dutiable at 15 per centum ad valorem pursuant to the provisions in paragraph 353, as modified, *supra*.

That claim of plaintiff is therefore sustained. Judgment will issue accordingly.

### DISSENTING OPINION

RAO, Judge: I regret to state that I find myself unable to agree with the decision of the majority in this case.

I am of opinion that the evidence adduced on behalf of the plaintiff is not sufficient to overcome the presumption of correctness inherent in the collector's classification of the machines in question within the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T. D. 48093, for knitting machines, finished or unfinished, and not specially provided for. Such classification presupposes a finding that these machines were knitting machines, and the burden was cast upon the plaintiff to prove otherwise. *United States* v. *I. Magnin & Co., Inc.*, 21 C. C. P. A. (Customs) 77, T. D. 46394; *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309. This I believe has not been accomplished in the record as here made.

Neither of plaintiff's witnesses had any clear idea of the precise operation by which hosiery-mending machines function. They were able to describe the result produced by the machine, but not the process by which that result was reached. Except for the fact that they both were of opinion that hosiery-mending machines do not knit, neither witness was able to state with any degree of expertness the differences in structure, function, and operation, if any, between what they considered to be knitting machines and hosiery-mending machines.

Nevertheless, what little affirmative evidence was adduced by them indicates that the needle on the machine in issue is a "latching" needle and that the stitching in the repair resembles the stitching in the original hose. It seems to me that a machine which creates a knitting stitch is necessarily a knitting machine.

According to the testimony of defendant's witness, the needle of a hosiery-mending machine takes the last closed loop in the hosiery and latches it over the thread which has been exposed by the run in the stocking, and makes a new loop as the result of the latching-over process. If this be the method by which the machine at bar operates, and all of the testimony elicited at the trial tends so to indicate, it responds to the method of operation of knitting machines generally as described and defined in the Century Dictionary and Encyclopedia, wherein, at page 3304 of volume V, we find the following:

**knitting-machine,** * * * Such machines employ barbed or hooked needles, having some form of *latching device* for catching the thread and drawing it

through a *loop* previously made in the same thread, and throwing it off at the right moment. * * * There is also a single-needle hand knitting-machine. [Italics supplied.]

It is significant also that Webster's New International Dictionary contains the following:

knit * * * **3.** To bring or bind together as by knitting or knotting; to unite firmly or closely; to interlock, intertie, intertwine * * *.

*knit up* * * * to unite, make, or *repair by knitting*. [Last italics supplied.]

latch * * * **4.** *Knitting Machines.* The piece hinged to the needle, which holds the engaged *loop* in position while the needle is penetrating another loop * * *. [Last italics supplied.]

I note that the majority of the court rely on the fact "that whereas a knitting machine fabricates hosiery from yarn or thread, the machines of the type under consideration which do not employ thread or yarn in their operation merely repair completed hosiery in which runs have appeared."

I do not consider it to be consequential that machines such as those before us operate without the use of additional or independent thread or yarn. That a stitch cannot be made without the use of yarn is a self-evident proposition, but whether such yarn is obtained from an extraneous source, or is found in the fabric of a knitted stocking, loosened by a run, it is, and remains, yarn, and is the means by which the stitch is created. The more pertinent, and in fact the only, query is whether the stitch made with the yarn is a knitting stitch. If it is, then it must follow that the machine which makes the knitting stitch is a knitting machine.

The fabric of the stocking which has become damaged or destroyed by the tearing of the thread and the running of the stitch is, by the operation of the machines at bar, re-formed. The stitch employed to re-form the fabric is a stitch which responds to the definition of a knitting stitch. Therefore, the machine which creates the stitch is a knitting machine.

I am not convinced that the common meaning of the term "knitting machine" is so circumscribed by the definitions adverted to by the majority that a machine of the type before us would be excluded from being so denominated. On the contrary, I am firmly of the belief that these machines fall directly within the common comprehension of the term, and, there being no question here of commercial designation, that they are, in fact, knitting machines. Accordingly, I am of opinion that the collector's classification should be sustained.